IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMORY M. GHANA, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil No. 01-1620 (JBS/AMD) |
| NEW JERSEY STATE PAROLE BOARD, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Emory M. Ghana, Pro Se
#52180/135365A
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Emily Anne Samuels, Deputy Attorney General
State of New Jersey Office of the Attorney General
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625
     Counsel for Defendants

**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

     This case is about the alleged violation of Plaintiff Emory
M. Ghana's right to free exercise of religion while he was
confined at New Jersey State Prison at Trenton.  The matter
comes before the Court on Defendant Lydell Sherrer's motion for
summary judgment, or in the alternative for judgment on the
pleadings.  [Docket Item 197.]  Plaintiff claims Defendants

unconstitutionally infringed upon his First Amendment right to practice his religion, the African Hebrew Israelites of Jerusalem faith, while Plaintiff resided at his previous places of confinement, New Jersey State Prison at Trenton and Northern State Prison in Newark.

Plaintiff's Third Amended Complaint contains two claims, the first brought for violation of his First Amendment right of free exercise of religion under 42 U.S.C. § 1983 and the second brought under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, previously referred to as Legal Claim A and Legal Claim B, respectively.  Both claims were brought for both injunctive relief and damages. Plaintiff's § 1983 claim applies to three defendants, Jack Terhune, Lydell Sherrer, Samuel Atchison, while the § 2000cc claim remains only as to defendant Lydell Sherrer.[1]  Defendants mistakenly believe that only the second claim from Plaintiff's Third Amended Complaint remains.  But as will be explained in more detail below, Plaintiff's first claim has never been dismissed.

Defendant Sherrer raises three legal arguments.  First, that in deposition testimony Plaintiff testified that Sherrer

---

[1] Plaintiff lists a fourth defendant, Roy Hendricks, see Compl. § III (Parties), and makes allegations against him, see Compl. § III (Facts) ¶ 2-6, but does not specifically include him in either Legal Claim A or Legal Claim B.

did not violate his First Amendment rights.  Br. In Supp. of
Def.'s Mot. for Summ. J.  Second, that the Prison Litigation
Reform Act (PLRA) prevents the Court from granting Plaintiff
injunctive relief.  And third, that the Court should dismiss
because of Plaintiff's failure to comply with procedures for
preparation of the Final Pretrial Order.

    As explained below, this Court does not find dismissal to
be warranted as a sanction for violation of the pretrial orders.
However, this Court does find that the claims against Sherrer
are foreclosed by Plaintiff's deposition testimony and that
Plaintiff's claims for injunctive relief under 42 U.S.C. § 1983
and § 2000cc are moot.  Therefore, the only claim that will
remain is Plaintiff's claim for compensatory and punitive
damages against Defendants Jack Terhune, Roy Hendricks and
Samuel Atchison under § 1983.


**II.  BACKGROUND**

    The lengthy procedural history of this case is important to
an understanding of the claims that are left for decision in
this motion.  Plaintiff, Emory M. Ghana, is currently an inmate
at South Woods State Prison (SWSP).  Decl. of Emily Samuels, Ex.
A.  He was transferred to SWSP on February 22, 2011.  Id.
Before his move to SWSP, he was an inmate at Northern State
Prison (NSP).  Compl. § III (Facts) ¶ 7.  Prior to his period at

3

NSP, Plaintiff was incarcerated at New Jersey State Prison (NJSP) in Trenton, NJ.  Id.  Plaintiff's First Amendment allegations arise out of his time at NJSP.

Plaintiff's initial complaint from 2001 included a host of allegations against numerous defendants.  See Pl.'s Compl. §§ III (Defendants), III (Facts) and V.  Most of the claims and defendants were dismissed sua sponte pursuant to 28 U.S.C. § 1915(b)(1) by the Honorable Mary L. Cooper, who was the judge initially assigned to the case.  Ghana v. New Jersey State Parole Board, No. 01-1620 (MLC), slip op. at 2 (D.N.J. Apr. 26, 2001) (Docket Item 7).

After that decision, Plaintiff's Eighth Amendment claims involving exposure to asbestos and tobacco and Plaintiff's First Amendment claims involving denial of free exercise of religion remained.  Id.  Judge Cooper later dismissed Plaintiff's Eighth Amendment claim for damages regarding the asbestos.  Ghana v. New Jersey State Parole Board, No. 01-1620 (MLC), slip op. at 8 (D.N.J. Aug. 2, 2001) (Docket Item 26) ("Ghana does not allege actual injury from the asbestos; therefore, the Court cannot award compensatory damages to Ghana.").

Plaintiff's case was then transferred to the Honorable Freda Wolfson on March 12, 2003.  Order of Reassignment (Docket Item 53).  On July 16, 2003, Judge Wolfson granted Defendants' motion for summary judgment as it related to Plaintiff's Eighth

4

Amendment claim for injunctive relief.  Ghana v. New Jersey
State Parole Board, No. 01-1620 (FLW), slip op. at 2 (D.N.J.
July 16, 2003) (Docket Item 59).  But Judge Wolfson found there
was a genuine issue of material fact regarding whether Plaintiff
belonged to the Jewish or African Hebrew Israelite faith.  Id.
at 12.  Consequently, after Judge Wolfson's opinion of July,
2003, only Plaintiff's First Amendment claims remained.

On December 22, 2003, Plaintiff was granted leave to amend
his complaint to assert his claims under 42 U.S.C. § 1983 and
RLUIPA, 42 U.S.C. § 2000cc.  Order of Dec. 23, 2003, 2, 13.
(Docket Item 85).  The complaint subsequently filed, and which
is the basis for the current proceedings, was Plaintiff's Third
Amended Complaint.[2]  Plaintiff's Third Amended Complaint alleges
Defendants Terhune, Sherrer, Hendricks and Atchison infringed
upon his First, Eighth, and Fourteenth Amendment rights (Legal
Claim A) and that Defendant Sherrer infringed upon his RLUIPA
rights (Legal Claim B).

Plaintiff is a member of the African Hebrew Israelites of
Jerusalem faith.  Tr. of Settlement Conference (Nov. 30, 2005),
10:10-11.  He alleges Defendants denied him religious incense
and oils, prohibited him from wearing religious headwear
whenever he wished, did not permit him to participate in

---

[2] Plaintiff titled this complaint "Third Amended Complaint"
although it is only his second amended complaint.

religious services, denied him religious tapes he had purchased, served him alleged Kosher meals that failed to comply with the tenets of his religion and sanctioned a policy to dispose of his religious paraphernalia.  Pl.'s Third Am. Compl., § IV ¶¶ 2-3, 5-6, 8, 11-13.

Plaintiff asserts his claims under 42 U.S.C. § 1983 (Legal Claim A) and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc (Legal Claim B). Defendants had previously moved for partial dismissal of the amended complaint as against Legal Claim B.  [Docket Item 87.] Judge Wolfson granted the motion in part insofar as Plaintiff sought monetary damages under the RLUIPA but denied Defendants' motion with respect to claims for injunctive relief under the RLUIPA.  Decl. of Emily Samuels, Ex C., Ghana v. Terhune, No. 01-1620, slip op. at 30 (D.N.J. Aug. 26, 2004).  Sherrer, as noted, is the only RLUIPA defendant.

There appears to have been some confusion as to what claims remained after Judge Wolfson's Memorandum Opinion of August, 2004.  Judge Wolfson made clear that her opinion only pertained to Plaintiff's RLUIPA claim since Defendants only moved for partial dismissal of Plaintiff's RLUIPA claim.  Id. at 3 ("Defendants move for partial judgment on the pleadings as to plaintiff's First Amendment claims under the RLUIPA only."). Indeed, the first line of Defendant's own brief in support of

its motion for partial judgment on the pleadings states:
"Defendants are entitled to partial judgment on the pleadings as
to plaintiff's claims under the Religious Land Use and
Institutionalized Persons Act."  Br. in Supp. of Defs' Mot. for
Partial J. on the Pleadings, 1.

Careful review of Judge Wolfson's 2004 opinion as well as
the rest of the vast procedural history reveals that Plaintiff's
§ 1983 allegations as they relate to infringements upon
Plaintiff's free exercise rights (that is, Legal Claim A) have
never been dismissed.  In the order of December 22, 2003,
Magistrate Judge Donio refused Plaintiff's request to file an
amended complaint that incorporated "new defendants and facts
unrelated to the original complaint."  [Docket Item 85.]  Legal
Claim A of Plaintiff's subsequent amended complaint (that is,
Third Amended Complaint) complies with this order.  In fact, the
wording of the claim is almost identical to the wording of
Plaintiff's claim in his original complaint, simply with more
details.  Compare Third Am. Compl. Legal Claim A with Compl.
Legal Claim D.

As such, Plaintiff's § 1983 claims under Legal Claim A
remain before this Court against all four Defendants.  Judge
Wolfson's ruling pertained only to Plaintiff's Legal Claim B.
As a result of that ruling, the only remaining claim under Legal
Claim B is for injunctive relief under RLUIPA against defendant

7

Sherrer in his official capacity.  Ghana v. Terhune, No. 01-1620
(FLW), slip op. at 30 (Aug. 26, 2004).

Since Judge Wolfson's opinion, the case was first stayed,
pending the Supreme Court's resolution of the constitutionality
of the RLUIPA and then reopened.  [Docket Items 98, 104.]  Then,
after a private settlement agreement was reached by the parties,
the case was terminated on December 1, 2005.  [Docket Item 115.]
Plaintiff subsequently made numerous attempts to both vacate the
settlement agreement and seek its enforcement.

Under the PLRA, 18 U.S.C. § 3626, there are two types of
settlement agreements: consent decrees, which must conform to
the PLRA's requirements, and private settlement agreements,
which do not have to abide by the PLRA.  The relief available
for a violation of a settlement agreement depends on which type
of settlement was agreed upon.  As Magistrate Judge Donio
explained in her Order of September 18, 2006, "[i]f a settlement
agreement is not by way of consent decree, a party asserting a
breach of that settlement agreement is limited to moving for
reinstatement of the action in federal court or filing an action
in state court for breach of contract."  Court Order of Sep. 18,
2006 (Docket Item 118).  Plaintiff and Defendants had not
entered into a consent decree; consequently, Plaintiff's only
remedy was to have the case reinstated, which it was on October
15, 2008.  [Docket Item 172.]

8

On January 23, 2009, the parties were ordered to submit their pretrial memoranda by February 27, 2009.  Order of Jan. 23, 2009 (Docket Item 176).  On February 2, 2009, Plaintiff instead sought leave to file a fourth amended complaint.  Letter from Dr. E.M. Ghana (Docket Item 178).  On May 8, 2009, Plaintiff again moved for leave to file a fourth amended complaint, which Magistrate Judge Donio denied on September 30, 2009.  [Docket Items 181, 184.]

On October 28, 2009, Plaintiff was ordered to file a pretrial memorandum with the Clerk's Office by November 30, 2009.  [Docket Item 185.]  On December 3, 2009, Judge Donio enlarged Plaintiff's time until December 31, 2009 to file his pretrial memorandum.  [Docket Item 187.]  On February 19, 2010, Plaintiff moved for leave to file a nunc pro tunc pretrial memorandum as timely, to possess and use religious exercise equipment, and to replace his color television.  [Docket Item 188.]  On April 7, 2010, Plaintiff's motion was granted insofar as Plaintiff sought to file a nunc pro tunc pretrial memorandum and denied as to the other elements of his motion.  [Docket Item 189.]

Plaintiff's motion for leave to file a nunc pro tunc pretrial memorandum as timely actually included the pretrial memorandum Plaintiff sought to file.  Magistrate Judge Donio had ordered that Plaintiff's pretrial memorandum should only address

claims asserted in the Third Amended Complaint that had not been dismissed.  Order of October 28, 2009 (Docket Item 185). However, Plaintiff's pretrial memorandum does not appear to have addressed much, if any of the extant claims in his Third Amended Complaint.  Pl.'s Mot. for Leave to File Nunc Pro Tunc Pretrial Mem. as Timely (Docket Item 188).  Rather, it mostly asserted new claims for religious exercise equipment and a color television.  Id.

Plaintiff was again directed to supplement his pretrial memorandum at a status conference on January 28, 2011.  Br. in Supp. of Def.'s Mot. for Summ. J.  On February 2, 2011, Magistrate Judge Donio ordered that all further submissions regarding pretrial memoranda shall be filed by February 7, 2011. [Docket Item 195.]  Plaintiff has yet to file any supplement to his pretrial memorandum of February 19, 2010.

The current motion sets forth three arguments to dismiss Plaintiff's claims: (1) in Plaintiff's own deposition testimony he admitted he did not believe defendant Sherrer violated his First Amendment rights; (2) Plaintiff's claims for injunctive relief have become moot; and (3) Plaintiff has failed to comply with discovery orders.  Plaintiff has not submitted opposition to Defendants' motion.

### III. DISCUSSION

#### A.   Summary Judgment as to Sherrer

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993).

According to Plaintiff's own deposition testimony, he does not allege religious violations against Defendant Sherrer. The deposition testimony is as follows:

> Q: Mr. Sherrer is who?
> A: He is the deputy or assistant administrator at East Jersey State Prison.
> Q: And he has nothing to do with your claims on religion at New Jersey State Prison.  Is that correct?
> A: No. Rahway provided religious services.

Decl. of Emily Samuels, Ex. E (Pl.'s Dep. 67:20 to 68:2).  Since Plaintiff's RLUIPA claim alleges various violations of his freedom to exercise his religion and Plaintiff has admitted that Sherrer did not commit any such violations, Sherrer will be dismissed from the suit completely.  Further, because Plaintiff's RLUIPA claim only made allegations against Defendant

11

Sherrer, Plaintiff's entire RLUIPA claim will be dismissed as well.  Thus, Defendant's motion for summary judgment will be granted as to Legal Claim B and as to the remaining First Amendment violations naming Sherrer in Legal Claim A.

### B.   Mootness of Plaintiff's Claims for Injunctive Relief

According to Article III of the United States Constitution, for a lawsuit to properly come before a federal court, there must be an actual case or controversy.  Preiser v. Newkirk, 422 U.S. 395, 401 (1975).  "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them."  Id. (internal quotations and citations omitted).  Further, the "controversy must be extant at all stages of review, not merely at the time the complaint is filed."  Id. (quoting Steffel v. Thompson, 415 U.S. 452, 459 n. 10 (1974)).

However, "a matter is not necessarily moot simply because the order attacked has expired."  New Jersey Turnpike Auth. v. Jersey Cent. Power and Light, 772 F.2d 25, 31 (3d Cir. 1985).  An exception to the general rule exists if the dispute in question is one which is "capable of repetition yet evading review."  Id. (citing Nebraska Press Association v. Stuart, 427 U.S. 539, 546 (1976)).  The Third Circuit has explained that this exception is triggered if both of the following conditions

are met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again."  Id.

In cases nearly identical to the present one — where a prisoner alleges constitutional violations based on the conditions in his then-current prison but is transferred to a different facility before the courts have adjudicated an outcome — the Third Circuit has held that the "capable of repetition yet evading review" exception does not apply.  In Griffin v. Beard, 401 Fed. App'x 715 (3d Cir. 2010), plaintiff, who had been a prisoner at State Correctional Institution at Huntingdon (SCI-Huntingdon), filed a civil rights complaint pro se, alleging violations of the Eighth Amendment based on conditions at the facility.  He sought injunctive and declaratory relief as well as monetary damages.  Id.  Before plaintiff's case was heard on appeal, he was transferred to a different prison.  Id.  The Third Circuit found that plaintiff failed to satisfy both of the exception's requirements: "[Plaintiff] alleges persisting conditions that are not too short in duration to permit full litigation. There also is no indication that he is reasonably likely to be transferred back to SCI-Huntingdon. Griffin argues that he has been transferred there three times before, but the

13

record does not reveal the reasons for his current or past transfers or any reason to suspect that he will be transferred to SCI-Huntingdon again." Id. at 716. See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); Abdul-Akbar v. Watson, 4 F.3 195, 206-7 (3d Cir. 1993) ("[U]nless we were attracted by the groundless assumption that Abdul-Akbar is likely to be incarcerated again at the MSU [Maximum Security Unit] — an assumption that is clearly unsupported by the record — there simply is no demonstrated probability that [Abdul-Akbar] will again be among [the MSU inmate population.") (internal quotations and citations omitted); Olivares v. Zickefoose, 403 Fed. App'x 646 (3d Cir. 2010) (holding that prisoner's habeas petition to be transferred to a Residential Re-entry Center was rendered moot by his transfer to a Residential Re-entry Center); Wortman v. Beglin, 348 Fed. App'x 709 (3d Cir. 2009) (holding that prisoner's § 1983 claim against various prison officials for denial of recreation was rendered moot by prisoner's transfer to a different prison).

Cases which have met the "capable of repetition yet evading review" exception included a factor which made it likely the prisoner would be subject to the same conditions again. In Micklus v. Carlson, plaintiff was sentenced as a "young adult

14

offender" under the Youth Corrections Act (YCA), 18 U.S.C. §§ 5000-5026. 632 F.2d 227, 229 (3d Cir. 1980).  By the time the plaintiff's case came up on appeal, he was on parole from his YCA sentence.  Nevertheless, the Third Circuit found that "because of the low standard for reincarceration on the YCA sentence and because of the history of Micklus' confinement in noncomplying facilities," Plaintiff had demonstrated an actual possibility of suffering the same harm again.  Id. at 233.

In this case, Plaintiff has not been incarcerated under a special statute, like the YCA, which could have made it more likely Plaintiff will be subject to the same offending conditions again.  Nor is there any indication in the record that he will be returned to NJSP.  Consequently, his case appears virtually indistinguishable in all relevant parts to those of Griffin, Sutton, Abdul-Akbar, Olivares and Wortman. Significantly, Plaintiff does not allege that Defendants engaged in any sort of discriminatory policy that affects all prisons in New Jersey.  If that were the case, then Plaintiff would still be subject to alleged discrimination and his claims would continue.  Rather, Plaintiff's allegations are specific to NSP and NJSP at Trenton, and his claim for injunctive relief will be dismissed as moot.

However, the mootness of Plaintiff's claims for injunctive relief does not render moot his claims for compensatory and

punitive damages under § 1983.  <u>Sutton v. Rasheed</u>, 323 F.3d at
249 ("We conclude plaintiffs no longer present a justiciable
claim for declaratory and injunctive relief [due to mootness].
But plaintiffs' damages claims are still extant.").


### C.   Dismissal as Sanction

This Court now turns to the question of whether the case
should be dismissed pursuant to Rule 37(b)(2)(A)(v), which
permits the Court to "dismiss[] the action or proceeding in
whole or in part" because of Plaintiff's failure to comply with
case management orders.  Fed. R. Civ. P. 37(b)(2)(A)(v).  Under
Fed. R. Civ. P. 16(f), if a party fails to obey a scheduling or
pretrial order, the court may impose such sanctions against that
party "as are just."  Here, Plaintiff Ghana has not submitted
his pretrial memorandum despite being ordered to do so in
various Orders by Magistrate Judge Donio, as noted above, dating
from January 23, 2009, through February 2, 2011.

The Third Circuit has provided guidance as to when a
sanction of dismissal is appropriate.  Specifically, the Third
Circuit requires district courts to consider six factors: "(1)
the extent of the <u>party</u>'s personal <u>responsibility</u>; (2) the
<u>prejudice</u> to the adversary caused by the failure to meet
scheduling orders and respond to discovery; (3) a <u>history</u> of
dilatoriness; (4) whether the conduct of the party or the

attorney was <u>willful</u> or in <u>bad faith</u>; (5) the effectiveness of
sanctions other than dismissal, which entails an analysis of
<u>alternative sanctions</u>; and (6) the <u>meritoriousness</u> of the claim
or defense."  <u>Poulis v. State Farm Fire and Gas Co.</u>, 747 F.2d
863, 868 (3d Cir. 1984) (emphasis in original).  "Dismissals
with prejudice or defaults are drastic sanctions, termed
'extreme' by the Supreme Court."  <u>Poulis</u>, 747 F.2d at 867-8 (3d
Cir. 1984) (quoting <u>National Hockey League v. Metropolitan
Hockey Club</u>, 427 U.S. 639, 643 (1976)).

Dismissal may still be appropriate even if not all of the
factors weigh in favor of it.  <u>Hicks v. Feeney</u>, 850 F.2d 152,
156 (3d Cir. 1988) ("Not all of these factors need be met for a
district court to find dismissal is warranted."); <u>Hoxworth v.
Blinder, Robinson & Co., Inc.</u>, 980 F.2d 912, 919 (3d Cir. 1992)
("Although we have required district courts to make explicit
factual findings concerning these factors . . . we have also
stated that it is not necessary that all of the factors point
toward a default before that sanction will be upheld.")
(internal citations omitted); <u>Adegbuji v. Middlesex County</u>, 347
Fed. App'x 877, 881 (3d Cir. 2009) ("[W]e have never required
complete satisfaction of each <u>Poulis</u> factor in order to justify
the sanction of dismissal.").

    1.   <u>Extent of the party's personal responsibility</u>

17

Plaintiff is acting pro se, which means he is not relying on a lawyer to respond to court matters.  Pro se plaintiffs are solely responsible for complying with court deadlines.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002) ("With respect to Emerson's personal responsibility, the District Court recognized that because Emerson is proceeding pro se, his failure to comply with its orders could not be blamed on counsel."); Briscoe v. Klaus, 538 F.3d 252, 258-9 (3d Cir. 2008) ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney.").

In Briscoe, the District Court found the prisoner, Briscoe, personally responsible for not appearing at his pretrial conference.  538 F.3d at 258.  When the District Court communicated with the prison officials, they claimed that Briscoe had refused to attend.  Id. at 256-7.  On appeal, Briscoe claimed that in reality the prison guards had refused to take him.  Id. at 259.  The Third Circuit found the District Court had erred by "assum[ing] that the prison officials' correspondence was accurate and truthful."  Id.  "[T]he District Court should have provided Briscoe with the opportunity to explain his failure to attend the conference[.]"  Id.  Because

18

the District Court did not provide the prisoner with an
opportunity to explain himself, the District Court did not have
sufficient record evidence to "find that Briscoe was personally
responsible for failing to attend the conference."  Id.

Unlike Briscoe, in this case, Plaintiff has provided no
reason regarding Plaintiff's failure to submit his final
pretrial memorandum as required by Judge Donio's Order, despite
having the opportunity to offer his explanation in opposition to
this motion.  Plaintiff is thus found to be personally
responsible for his non-compliance with the Court's Order, and
extensions thereof, to submit his final pretrial papers.


        2.   Prejudice to the adversary caused by the failure
             to meet scheduling orders

Failure to comply with discovery orders which prejudices a
party is a factor that "bear[s] substantial weight in support of
a dismissal or default judgment."  Scarborough v. Eubanks, 747
F.2d 871, 876 (3d Cir. 1984).  Such prejudicial harm does not
have to be irremediable in nature.  Curtis T. Bedwell and Sons,
Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693 (3d Cir.
1988).  "[T]he burden imposed by impeding a party's ability to
prepare effectively a full and complete trial strategy is
sufficiently prejudicial" to satisfy this requirement.  Ware v.
Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).

In Scarborough v. Eubanks, the Third Circuit elaborated on examples of prejudice that might support a dismissal: "Examples of such prejudice are the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984).

Poulis v. State Farm and Hoxworth v. Blinder provide examples of prejudice that supported a dismissal. In Poulis, "interrogatories were never answered nor were objections filed; defense counsel was obliged to file a motion to compel answers, and was obliged to file its pretrial statement without the opportunity to review plaintiff's pretrial statement." Poulis v. State Farm, 747 F.2d at 868. In Hoxworth v. Blinder, "[p]laintiffs were required to expend significant time and costs in attempting to secure responses to their discovery requests, responses which were never adequately made," and "[a]s a result, plaintiffs were forced to prepare their pretrial memorandum without" all the necessary information. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 920 (3d Cir. 1992).

In this case, Plaintiff has prejudiced Defendants. Defendants contend that "Plaintiff is prejudicing Defendants from properly defending themselves in this action by not articulating his claims in accordance with Court orders." Br.

in Supp. of Defs.' Mot. For Summ. J. or J. on the Pleadings, 19-
20. Plaintiff has made it more difficult for Defendants to
prepare a proper defense by asserting new claims that were
forbidden and by not addressing the relevant claims from the
Third Amended Complaint.  While Defendants have the benefit of
the Magistrate Judge's order specifying what Plaintiff is
supposed to include in his pretrial memorandum, they do not
actually have Plaintiff's response.  Consequently, this factor
weighs in favor of Defendants.

### 3.   History of dilatoriness

Plaintiff's behavior exhibits the "extensive or repeated
delay or delinquency [that] constitutes a history of
dilatoriness, such as consistent non-response to
interrogatories, or consistent tardiness in complying with court
orders."  Adams v. Trustees of New Jersey Brewery Employees'
Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994).
Additionally, a party's "history of dilatoriness" should be
considered "in light of its behavior over the life of the case."
Id. at 875.  For example, complying with the Court's orders for
the first two and a half years of litigation could mitigate more
recent tardiness.  Id. (internal citations and quotations are
omitted).

In Poulis, the Court found a "pattern of dilatoriness"

where the plaintiff's attorney failed to ever respond to
defendant's interrogatories, filed a late pretrial statement and
then filed late a brief on appropriate sanctions for the two
previous infractions.  747 F.2d at 865-6, 868.  In Curtis T.
Bedwell and Sons, Inc. v. International Fidelity Ins. Co., 843
F.2d 683 (3d Cir. 1988), the Court found an even greater history
of dilatoriness than in Poulis.  The plaintiffs failed to fully
comply with document requests, failed to completely answer
defendant's expert interrogatories and failed on multiple
occasions to attend depositions.  Id. at 694.  Similarly, in
Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988), the plaintiff
failed to attend multiple depositions, attended one for only
forty minutes before leaving and informed his lawyer that he
would not attend any other depositions because he valued his
privacy.

     In the current case, Plaintiff was late to file a pretrial
memorandum, and the one that Plaintiff did file failed to comply
with Magistrate Judge Donio's order.  Plaintiff was originally
supposed to file his pretrial memorandum by February 27, 2009.
He did not.  On October 28, 2009, Magistrate Judge Donio again
ordered Plaintiff to file a pretrial memorandum, this time by
November 30, 2009.  Plaintiff did not, and he has yet to file a
pretrial memorandum that complies with the October 28 Order,
despite additional extensions of deadline to do so through

February 8, 2011.  Plaintiff's conduct over the past two and one half years has exhibited significant dilatory behavior. Consequently, this factor moves in favor of Defendant.


4.  <u>Was the conduct willful or in bad faith</u>

"Willfulness involves intentional or self-serving behavior."  <u>Adams</u>, 29 F.3d at 875.  "Under this factor, the District Court must consider whether the conduct was the type of willful or contumacious behavior which was characterized as flagrant bad faith."  <u>Briscoe</u>, 538 F.3d at 262 (internal quotations and citations omitted).  Negligent or inadvertent conduct is not considered contumacious.  <u>Id.</u> (internal quotation marks omitted).  In <u>Briscoe</u>, the Court found that the record did not support a conclusion that Briscoe acted willfully because he was never provided a chance to explain why he failed to appear at a pretrial hearing.  <u>Id.</u> at 261-2.

However, a party's tardiness may indicate willful conduct. In <u>Emerson v. Thiel College</u>, the plaintiff repeatedly filed late responses to motions, sought extensions of time on multiple occasions and petitioned for numerous stays due to alleged medical conditions.  296 F.3d at 187-8.  The Court found that the plaintiff's "conduct in failing to comply with the court's orders and in dragging the case out was willful and not merely negligent or inadvertent."  296 F.3d at 191.  By contrast, in

Scarborough v. Eubanks, the Court found no basis for willfulness or bad faith where the plaintiff's attorney filed all the appropriate documents with the court "somewhat tardily."  747 F.2d at 875.  This case resembles Emerson more than Scarborough. It is worth noting that Plaintiff has, in addition to never having filed the supplemental pretrial memorandum, also failed to file any response to Defendants' current motion.  This factor weighs in favor of Defendants.


        5.   Effectiveness of sanctions other than dismissal

     "Dismissal must be a sanction of last, not first resort." Poulis, 747 F.2d at 869.  Before imposing the "extreme sanction of dismissal or default," Poulis, 747 F.2d at 870, courts should consider alternative remedies.  Adams, 29 F.3d at 876.  These alternative sanctions frequently include the imposition of attorneys' fees related to the preparation of motions to compel compliance with discovery orders.  See Poulis, 747 F.2d at 869.

     In this case, Plaintiff is proceeding pro se but not in forma pauperis.  The Court could impose Defendant's attorney's fees upon Plaintiff.  Cf. Briscoe, 538 F.3d at 262-3 ("[W]here a plaintiff is proceeding pro se, and moreover, is proceeding in forma pauperis, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, would not be an effective

alternative.") (internal quotations and citations omitted).

This does not mean dismissal is the only conceivable sanction for pro se plaintiffs.  Alternative, non-monetary sanctions include: "a warning, a formal reprimand, placing the case at the bottom of the calendar . . . [and] the preclusion of claims or defenses."  Titus v. Meredes Benz of North America, 695 F.2d 746, 749 n.6 (3d Cir. 1982).

In many cases with pro se plaintiffs, the Court has imposed other types of sanctions before ordering dismissal.  Curtis T. Bedwell & Sons, 843 F.2d at 695-6 (holding that the district court did not abuse its discretion for ordering dismissal after first imposing three lesser sanctions); Hicks, 850 F.2d at 156-7 (agreeing with the district court's decision to dismiss after having previously warned plaintiff of the possibility of dismissal for failing to appear at a court-ordered deposition and assessing attorney's fees for failing to attend two earlier depositions).  In this case, no alternative sanctions have ever been ordered.  As a result, this factor weighs heavily against outright dismissal.

### 6.   Meritoriousness of the claim or defense

In evaluating the meritoriousness of a claim or defense, the Court in Poulis essentially adopted the same standard as under Rule 12(b)(6): "[F]or this inquiry, we do not purport to

use summary judgment standards.  A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis, 747 F.2d 869-70; Briscoe, 538 F.3d at 263 ("Generally, in determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim.")

It is sufficient for this prong to note that Plaintiff's complaint survived past the sua sponte stage, Brown v. Merline, No. 05-2824, 2007 U.S. Dist. WL 3171217, at *1, *3 (D.N.J. Oct. 26, 2007); Chiarulli v. Taylor, No. 08-4400, 2010 U.S. Dist. WL 1371944, at *1, *4 (D.N.J. Mar. 31, 2010); Williams v. Sullivan, No. 08-1210, 2011 U.S. Dist. WL 2119095, at *1, *8 (D.N.J. May 20, 2011), and that Judge Wolfson previously found genuine issues of material fact as to Plaintiff's First Amendment claims.  Ghana v. New Jersey State Parole Bd., No. 01-1620 (FLW), slip op. at 1, 12-13 (D.N.J. July 16, 2003).  Defendants have not proffered any affirmative defenses as to Plaintiff's First Amendment claims.  Consequently, this prong points in favor of Plaintiff.


7.  Outcome

As previously noted, not all of the factors need to argue in the same direction and no single factor is determinative.

See cases cited supra pp. 11-12.  In this case, the first,
second, third and fourth factors weigh in favor of Defendants
while the fifth and sixth factors weigh in favor of Plaintiff.
Although Defendants' reasoning is strong and logical, the Court
finds that it would not be just to dismiss Plaintiff's claims
without attempting alternative measures first.  Consequently,
this Court will allow Plaintiff fourteen (14) days to file a
pretrial memorandum that complies with Magistrate Judge Donio's
orders of October 28, 2009.  This will be Plaintiff's last
chance to specify his remaining claims for violation of 42
U.S.C. § 1983 against the three remaining defendants he named in
Legal Claim A of his Third Amended Complaint, and, failing
timely submission within fourteen (14) days hereof, coupled with
his failure to oppose the motion, the Court will in that event
dismiss his case with prejudice for failure to prosecute.


IV.  **CONCLUSION**

      Because Plaintiff has been transferred away from the prison
in which he allegedly suffered constitutional violations,
Plaintiff's claims for injunctive relief under § 1983 and the
RLUIPA are moot, though Plaintiff's claim for compensatory and
punitive damages for violation of First Amendment rights under
§ 1983 continue to remain as the sole remaining claim.  Summary
judgment upon the RLUIPA claim is granted in favor of defendant

Sherrer.  The Court grants Plaintiff one final opportunity to file a pretrial memorandum that complies with Magistrate Judge Donio's orders of April 7, 2010 and February 2, 2011 within fourteen (14) days of the entry of this Opinion and Order as to the sole remaining claim for alleged violation of his First Amendment rights of free exercise of religion at New Jersey State Prison in Trenton against defendants Terhune, Hendricks and Atchison; if Plaintiff fails to comply with this Order, the Court will enter an order of dismissal with prejudice, for failure to prosecute.  The accompanying Order will be entered.


**August 15, 2011**                    **s/  Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       United States District Judge

28